CATHERINE CORTEZ MASTO
Attorney General of the State of Nevada
ERIC WITKOSKI
Consumer Advocate and Chief Deputy Attorney General
BRIAN ARMSTRONG, Bar No. 8761
Senior Deputy Attorney General
State of Nevada, Office of the Attorney General
Bureau of Consumer Protection
555 E. Washington Ave., Suite 3900
Las Vegas, Nevada 89101
Telephone: (702) 486-3420
Fax: (702) 486-3283
Email: antitrust@ag.nv.gov
Attorneys for Plaintiff State of Nevada

PETER T. BARBUR, New York State Registration No. 2260545, *Pro Hac Vice pending*
Cravath Swaine & Moore LLP
Worldwide Plaza
825 Eighth Ave.
New York, New York 10019-7475
Telephone: (212) 474-1000
Fax: (212) 474-3700
Email: pbarbur@cravath.com
Attorney for Defendants Universal Health Services, Inc. and Alan B. Miller

(Other Counsel Listed on Signature Page)

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **THE STATE OF NEVADA by its ATTORNEY GENERAL CATHERINE CORTEZ MASTO**<br><br>Plaintiff,<br><br>       v.<br><br>**UNIVERSAL HEALTH SERVICES, INC., ALAN B. MILLER, and PSYCHIATRIC SOLUTIONS, INC.**<br><br>Defendants. | Case No.: 2:10-cv-01984<br><br>**NOTICE – OTHER JOINT REQUEST FOR ENTRY OF FINAL JUDGMENT AND ORDER TO HOLD SEPARATE AND MAINTAIN ASSETS** |

Plaintiff State of Nevada, through its Attorney General, Defendants Universal Health Services, Inc. and Alan B. Miller (collectively, "UHS") and Defendant Psychiatric Solutions, Inc. ("PSI") (UHS and PSI are collectively referred to as "Defendants"), through their attorneys, hereby notify the Court that they request the Court to enter the Final Judgment ("Judgment") and Order to Hold Separate and Maintain Assets ("Hold Separate Order"), both of which accompany this notice as Exhibits A and B, on the following grounds:

1.      UHS operates Psychiatric Hospitals providing Acute Inpatient Psychiatric Services to Nevada consumers in the Las Vegas Area (all capitalized terms are defined in the Judgment).  PSI competes with UHS to provide Acute Inpatient Psychiatric Services in the Las Vegas Area.

2.      On May 16, 2010, Defendants agreed that UHS would acquire all issued and outstanding stock of PSI and an assumption of PSI debt, and PSI would become a wholly-owned subsidiary of UHS.

3.      Since June 2010, Plaintiff, in coordination with the Federal Trade Commission ("Commission"), conducted an investigation of the proposed acquisition to determine whether the proposed acquisition may tend to substantially lessen competition in relevant markets in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, and the Nevada Unfair Trade Practice Act, NRS 598A *et seq.*  As a result of the investigation, Plaintiff determined that the proposed acquisition would violate Section 7 of the Clayton Act and the Nevada Unfair Trade Practice Act unless remedies were obtained to maintain competition in the Acute Inpatient Psychiatric Services market in the Las Vegas Area.

4.      The Parties engaged in arms-length negotiations, and arrived at an agreed-upon resolution for entry of the Judgment and Hold Separate Order to address Plaintiff's concerns specified in the Complaint.  The Judgment requires Defendants, *inter alia*, to divest the following two PSI-owned Psychiatric Hospitals and related assets in the Las Vegas Area ("Hold Separate Business"):

A.  Montevista Hospital, 5900 West Rochelle Avenue, Las Vegas, Nevada  89103; and

B.  Red Rock Behavioral Health Hospital, 5975 West Twain Avenue, Las Vegas, Nevada 89103.

5.      Post-acquisition, the Hold Separate Order requires Defendants to competitively maintain the Hold Separate Business separately from UHS' business operations until the asset divestiture occurs.  Plaintiff believes this relief ensures that competition would not be substantially lessened as a result of the allegations in its Complaint.

6.      Entry of the Judgment and Hold Separate Order is consistent with the Commission's actions, in which the Commission seeks substantially the same relief pursuant to its administrative process (although the Commission seeks additional divestiture relief in the State of Delaware and the Commonwealth of Puerto Rico).

7.      Accordingly, Plaintiff submits that entry of the Judgment and Hold Separate Order is in the public interest.

8.      The Parties consent to entry of the Judgment and the Hold Separate Order without trial or adjudication of any issue of fact or law.  Defendants stipulate that this Court has

jurisdiction over them and the subject matter of this action without any admission by Defendants or finding of wrongdoing or violation of any law.

9. Defendants represent that the terms and conditions required by the Judgment and the Hold Separate Order can and will be made, and Defendants have already agreed to comply with the terms of the Judgment and the Hold Separate Order as if they were already in effect.

10. The Parties are prepared to provide additional information in writing or through appearances before the Court.

Respectfully Submitted,

CATHERINE CORTEZ MASTO, Attorney General of the State of Nevada
ERIC WITKOSKI, Consumer Advocate and Chief Deputy Attorney General

/s/ Brian Armstrong                                      November 15, 2010
_____          _____
BRIAN ARMSTRONG                                    Date
Senior Deputy Attorney General
Bureau of Consumer Protection
Attorneys for Plaintiff State of Nevada

/s/ Peter Barbur                                            November 15, 2010
_____          _____
PETER T. BARBUR                                      Date
Cravath Swaine & Moore LLP
Attorney for Universal Health Services, Inc. and Alan B. Miller
*Pro Hac Vice* pending; will comply with LR IA 10-2 in 7 days

/s/ Kenneth Prince & Lisl Dunlop                 November 15, 2010
_____          _____
KENNETH PRINCE                                      Date
New York State Registration No. 1014463
kprince@shearman.com
LISL DUNLOP
New York State Registration No. 2910362
ldunlop@shearman.com

4 – Notice – Joint Request For Entry Of Final Judgment And Order To Hold Separate And Maintain Assets

Shearman & Sterling LLP
599 Lexington Ave.
New York, New York 10022
Tel:     212-848-4000
Fax:     212-848-7179
Attorneys for Psychiatric Solutions, Inc.
*Pro Hac Vice* pending; will comply with LR IA 10-2 in 7 days

## EXHIBIT INDEX

| Number | Description |
|--------|-------------|
| A | Final Judgment |
| B | Order To Hold Separate And Maintain Assets |

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2010, I caused a true and complete copy of Plaintiff's Notice – Other Joint Request For Entry Of Final Judgment And Order To Hold Separate And Maintain Assets to be served on the following counsel of record via electronic mail (as previously stipulated) and through the Case Management/Electronic Case Files (CM/ECF) system (to the extent counsel has registered with the CM/ECF for this action).

CATHERINE CORTEZ MASTO, Attorney General
ERIC WITKOSKI, Consumer Advocate and
Chief Deputy Attorney General

By:    /s/ Brian Armstrong
        BRIAN ARMSTRONG
        Senior Deputy Attorney General
        Bureau of Consumer Protection

Recipients:

**Attorney(s) for Defendants Universal Health Services, Inc. and Alan B. Miller**
Peter T. Barbur
Cravath Swaine & Moore LLP
Worldwide Plaza
825 Eighth Ave.
New York, New York 10019-7475
Telephone: (212) 474-1000
Fax: (212) 474-3700
Email: pbarbur@cravath.com

**Attorney(s) for Defendant Psychiatric Solutions, Inc.**
Kenneth Prince
kprince@shearman.com
Lisl Dunlop
ldunlop@shearman.com
Shearman & Sterling LLP
599 Lexington Ave.
New York, New York 10022
Telephone: (212) 848-4000
Fax: (212) 848-7179

# EXHIBIT A

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **THE STATE OF NEVADA by its ATTORNEY GENERAL CATHERINE CORTEZ MASTO**<br><br>Plaintiff,<br><br>        v.<br><br>**UNIVERSAL HEALTH SERVICES, INC., ALAN B. MILLER, and PSYCHIATRIC SOLUTIONS, INC.**<br><br>Defendants. | Case No.: 2:10-cv-01984<br><br>**FINAL JUDGMENT** |

WHEREAS, Plaintiff State of Nevada, through its Attorney General, after having initiated an antitrust investigation of the proposed acquisition of Psychiatric Solutions, Inc. ("PSI"), by Universal Health Services, Inc. ("UHS"), an entity controlled by Alan B. Miller, hereinafter collectively referred to as Defendants, filed its Complaint on November 15, 2010 alleging violations of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, and the Nevada Unfair Trade Practices Act, NRS 598A *et seq.*;

AND WHEREAS, Defendants agree that this Court has jurisdiction over them and the subject matter in this action;

AND WHEREAS, Plaintiff and Defendants, through their attorneys, have consented to the entry of this Final Judgment ("Judgment") without trial or adjudication of any issue of fact or law and without this Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Judgment pending its approval by the Court and thereafter;

AND WHEREAS, the essence of this Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to ensure that competition is not substantially lessened in the market of Acute Inpatient Psychiatric Services in the Las Vegas Area (both defined herein), and to provide other relief as described herein;

AND WHEREAS, Defendants have entered into a similar order with the Federal Trade Commission ("Commission") in a Related Action (defined herein) to address the same allegations set forth by Plaintiff in its Complaint;

AND WHEREAS, Defendants have represented to Plaintiff that the divestiture required by this Judgment and other terms and conditions identified herein can and will be made and that Defendants will not later raise any claims of hardship or difficulty as grounds for asking the Court to modify any of the provisions of this Judgment;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, without any admission or finding of wrongdoing or violation of any law, and upon consent of the Parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

A.  This Court has jurisdiction over the subject matter of, and each of the Parties to, this action.  The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18 and under NRS 598A.060(1)(f), alleged in the Complaint as a pendent state claim.

B.  Defendant Universal Health Services, Inc. is a corporation organized, existing and doing business under and by virtue of the laws of Delaware, with its corporate head offices and

principal place of business located at 367 South Gulph Road, PO Box 61558, King of

Prussia, Pennsylvania 19406-0958.

C.   Defendant Alan B. Miller is a natural person with his offices and principal place of

business located at 367 South Gulph Road, PO Box 61558, King of Prussia, Pennsylvania

19406-0958.

D.   Defendant Psychiatric Solutions, Inc. is a corporation organized, existing and doing

business by virtue of the laws of Delaware, with its corporate head offices and principal

place of business located at 6640 Carothers Parkway, Suite 500, Franklin, Tennessee

37067.

## II. DEFINITIONS

As used in the Judgment, the following definitions apply:

A.   "UHS" means Universal Health Services, Inc., its directors, officers, employees, agents,

representatives, successors, and assigns; and its joint ventures, subsidiaries, divisions,

groups and affiliates in each case controlled by UHS, and the respective directors,

officers, employees, agents, representatives, successors, and assigns of each; after the

Acquisition, UHS includes PSI.

B.   "Alan B. Miller" means Alan B. Miller, a natural person, and all partnerships, joint

ventures, subsidiaries, divisions, groups, and affiliates controlled by Alan B. Miller, and

the respective partners, directors, officers, employees, agents, attorneys, representatives,

successors, and assigns of each.

C.   "PSI" means Psychiatric Solutions, Inc., its directors, officers, employees, agents,

representatives, successors, and assigns; its subsidiaries, divisions, groups, and affiliates

controlled by Psychiatric Solutions, Inc., and its respective directors, officers, employees, agents, representatives, successors, and assigns of each.

D. "Defendants" mean Alan B. Miller, UHS, and PSI, individually and collectively.

E. "Acquirer" means any Person that receives the prior approval of Plaintiff to acquire the Divestiture Assets pursuant to this Judgment.

F. "Acquisition" means the proposed acquisition described in and contemplated by the Agreement and Plan of Merger by and among UHS and PSI dated as of May 16, 2010.

G. "Acquisition Agreement" means the Agreement and Plan of Merger by and among UHS and PSI dated as of May 16, 2010.

H. "Acute Inpatient Psychiatric Services" means the provision of inpatient psychiatric services for the diagnosis, treatment and care of patients deemed, due to an acute psychiatric condition, to be a threat to themselves or others or unable to perform basic life functions.

I. "Agreement to Abide by Final Judgment and Order to Hold Separate and Maintain Assets" means the agreement signed by Defendants whereby they agree to comply with the terms of the Final Judgment and Order to Hold Separate and Maintain Assets from the date Defendants sign the agreement, as if the Final Judgment and Order to Hold Separate and Maintain Assets have been signed by the Court and are in full force and effect.

J. "Business Records" means all information, documents and records, including all electronic records wherever stored, including without limitation, client and customer lists, patient and payor information, referral sources, research and development reports,

production reports, service and warranty records, equipment logs, operating guides and manuals, financial and accounting documents, creative materials, advertising materials, promotional materials, studies, reports, correspondence, financial statements, financial plans and forecasts, operating plans, price lists, cost information, supplier and vendor contracts, marketing analyses, customer lists, customer contracts, employee lists, salaries and benefits information, and, subject to legal requirements, copies of all personnel files.

K. "Closing Date" means the date on which Defendants consummate a transaction to assign, grant, license, divest, transfer, deliver, or otherwise convey to an Acquirer the Divestiture Business.

L. "Commission" means the Federal Trade Commission.

M. "Confidential Business Information" means information not in the public domain that is primarily related to or primarily used in connection with the Divestiture Business, except for any information that was or becomes generally available to the public other than as a result of disclosure by Defendants, and includes, but is not limited to, pricing information, marketing methods, market intelligence, competitor information, commercial information, management system information, business processes and practices, payor and provider communications, bidding practices and information, procurement practices and information, supplier qualification and approval practices and information, and training practices.

N. "Direct Cost" means cost not to exceed the cost of labor, material, travel and other expenditures to the extent the costs are directly incurred to provide Transitional Services. "Direct Cost" to the Acquirer for its use of any of Defendants' employees' labor shall not

exceed the then-current average wage rate for such employee, including benefits.

O. "Divestiture Agreement" means any agreement(s) between Defendants and the Acquirer (or between a Divestiture Trustee and the Acquirer), and all amendments, exhibits, attachments, agreements, and schedules thereto, related to divestiture of the Divestiture Assets that have been approved by Plaintiff to accomplish the requirements of this Judgment.

P. "Divestiture Assets" means all of Defendants' rights, title, and interest in all property and assets, tangible or intangible, of whatever nature and wherever located, relating to or used in connection with the Divestiture Business, including, without limitation, the following:

   1. All real property interests (including fee simple interests and real property leasehold interests, whether as lessor or lessee), including all easements, appurtenances, licenses, and permits, together with all buildings and other structures, facilities, and improvements located thereon, owned, leased, or otherwise held;

   2. All Tangible Personal Property, including, without limitation, any Tangible Personal Property removed and not replaced from the Divestiture Assets, if such property was used by the Divestiture Assets on or after the Defendants execute the Agreement to Abide by Final Judgment and Order to Hold Separate and Maintain Assets with Plaintiff;

   3. All rights under any and all contracts and agreements (e.g. leases, service agreements such as dietary and housekeeping services, supply agreements, procurement contracts) including but not limited to contracts and agreements with

physicians, other health care providers, unions, third party payors, HMOs, customers, suppliers, sales representatives, distributors, agents, personal property lessors, personal property lessees, licensors, licensees, cosigners, and consignees;

4.  All rights and title in and to use the name of each of the hospitals on a permanent and exclusive basis (even as to Defendants);

5.  All Intellectual Property;

6.  All intangible rights and property other than Intellectual Property, including, going concern value, goodwill, internet, telephone, telecopy and telephone numbers, domain names, listings and web sites;

7.  All approvals, consents, licenses, certificates, registrations, permits, waivers, or other authorizations issued, granted, given or otherwise made available by or under the authority of any governmental body or pursuant to any legal requirement, and all pending applications therefore or renewals thereof, to the extent assignable;

8.  All inventories, stores, and supplies;

9.  All accounts receivable;

10. All rights under warranties and guarantees, express or implied;

11. All books, records, and files (electronic and hard copy); and

12. All Business Records;

provided, however, that the Divestiture Assets shall not include Defendants' rights, title, and interest to or in property and assets, tangible or intangible, that are not primarily related to or primarily used in connection with the Divestiture Business;

provided, however, at the option of the Acquirer, that the Divestiture Assets need not

include any property or assets that the Acquirer determines it does not need, if

Plaintiff approves the Divestiture Agreement without such property or assets; and

provided, however, that Defendants may retain a copy of all books, records, files and

Business Records to the extent necessary to comply with applicable law, regulations

and other legal requirements.

Q. "Divestiture Business" means the operation of the Psychiatric Hospital Facilities

primarily used in connection with or primarily relating to Montevista Hospital and Red

Rock Behavioral Health Hospital, including, but not limited to, the provision of Acute

Inpatient Psychiatric Services, whether provided or performed at the facilities or in a

different location within the Las Vegas Area, and also includes all other services,

businesses, and operations primarily related to Montevista Hospital and Red Rock

Behavioral Health Hospital.

R. "Hold Separate Order" means the Order to Hold Separate and Maintain Assets in this

matter.

S. "Intellectual Property" means, without limitation:

1. All patents, patent applications, and inventions and discoveries that may be

patentable;

2. All know-how, trade secrets, software, technical information, data, registrations,

applications for governmental approvals, inventions, processes, best practices

(including clinical pathways), formulae, protocols, standards, methods,

techniques, designs, quality control practices and information, research and test

procedures and information, and safety, environmental and health practices and

information;

3. All confidential or proprietary information, commercial information, management

systems, business processes and practices, customer lists, customer information,

customer records and files, customer communications, procurement practices and

information, supplier qualification and approval practices and information,

training materials, sales and marketing materials, customer support materials,

advertising and promotional materials; and

4. All rights in any jurisdiction to limit the use or disclosure of any of the foregoing,

and rights to sue and recover damages or obtain injunctive relief for infringement,

dilution, misappropriation, violation or breach of any of the foregoing.

T.  "Las Vegas Area" means the Las Vegas-Paradise Metropolitan Statistical Area

consisting of Clark County, Nevada.

U. "Montevista Hospital" means the Psychiatric Hospital Facility owned by PSI, located at

5900 West Rochelle Avenue, Las Vegas, Nevada 89103 and any satellite locations in the

Las Vegas Area.

V. "Person" means any individual, partnership, firm, corporation, association, trust,

unincorporated organization or other entity or governmental body.

W. "Prospective Acquirer" means a Person that Defendants intend to submit to Plaintiff for

its prior approval pursuant to Paragraph III.A. of this Judgment.

X. "Psychiatric Hospital" means a health care facility, licensed or certified as a psychiatric

hospital (except for a facility limited by its license or certificate to residential treatment or other long-term care), that provides Acute Inpatient Psychiatric Services.

Y.  "Psychiatric Hospital Facility" means a Psychiatric Hospital or a Psychiatric Unit.

Z.  "Psychiatric Unit" means a department, unit, or other organizational subdivision of a hospital, licensed or certified as a provider of inpatient psychiatric care (except for a facility limited by its license or certificate to residential treatment or other long-term care), that provides Acute Inpatient Psychiatric Services.

AA.      "Red Rock Behavioral Health Hospital" means the Psychiatric Hospital Facility owned by PSI located at 5975 W. Twain Avenue, Las Vegas, Nevada 89103 and any satellite locations in the Las Vegas Area.

BB.      "Related Action" means the Commission's investigation of UHS' proposed acquisition of PSI, File No. 101-0142.

CC.      "Relevant Employees" means any and all full-time employees, part-time employees, contract employees, or independent contractors whose duties, at any time during the ninety (90) days preceding the Acquisition or at any time after the Acquisition, related or relate primarily to the Divestiture Business.

DD.      "Tangible Personal Property" means all machinery, equipment, tools, fixtures, vehicles, furniture, inventories, computer hardware, and all other items of tangible personal property of every kind owned or leased by Defendants, wherever located, together with any express or implied warranty by the manufacturers or sellers or lessors of any item or component part thereof and all maintenance records and other documents relating thereto.

EE. "Third Parties" means Persons other than Defendants, the Acquirer or a Prospective Acquirer.

FF. "Transitional Administrative Services" means administrative assistance with respect to the operation of a Psychiatric Hospital Facility or the provision of Acute Inpatient Psychiatric Services, including but not limited to assistance relating to billing, accounting, governmental regulation, human resources management, information systems, managed care contracting, and purchasing, as well as providing assistance in acquiring, obtaining access, and customizing all software used in the provision of such services.

GG. "Transitional Clinical Services" means clinical assistance and support services with respect to the operation of a Psychiatric Hospital Facility or the provision of Acute Inpatient Psychiatric Services.

HH. "Transitional Services" means Transitional Administrative Services and Transitional Clinical Services.

### III. DIVESTITURE

A. Defendants shall divest the Divestiture Assets, absolutely and in good faith and at no minimum price, as an on-going business, only to a single Acquirer that receives the prior approval of Plaintiff, and only in a manner that receives the prior approval of Plaintiff. This shall occur no later than six (6) months from when the Commission's Decision and Order in the Related Action becomes final.

B. Defendants shall cooperate with the Acquirer to ensure that the Divestiture Assets are transferred to the Acquirer as financially and competitively viable Psychiatric Hospitals

operating as ongoing businesses providing Acute Inpatient Psychiatric Services, including, but not limited to, providing assistance necessary to transfer to the Acquirer all governmental approvals needed to operate the Divestiture Assets.

C.  Prior to the Closing Date, Defendants shall:

    1.  Secure all consents and waivers from all Third Parties that are necessary to permit Defendants to divest the Divestiture Assets and/or to grant any license(s) to an Acquirer to permit the Acquirer to operate the Divestiture Assets; provided, however, that Defendants may satisfy this requirement by certifying that such Acquirer has executed all such agreements directly with each of the relevant Third Parties; and

    2.  Take all actions necessary to ensure that the Divestiture Assets meet federal, state, local and municipal requirements necessary to allow the transfer of the Divestiture Assets to the Acquirer.

D.  Defendants shall in good faith implement a fair and open process to obtain bids for the Divestiture Assets from possible Prospective Acquirers.  Defendants shall describe the bid process in writing to Plaintiff.  At a minimum, Defendants' bid process shall include reasonable mechanisms that enable likely interested and qualified Persons to learn of the ability to bid on the Divestiture Assets at least seven (7) days before bidding closes, and Defendants shall not determine the Prospective Acquirer before bidding closes.

E.  Defendants shall not reacquire any part of the Divestiture Assets during the term of this Judgment without prior approval of Plaintiff.

F.   The purpose of the divestiture is to ensure the continuation of the Divestiture Assets as ongoing, viable Psychiatric Hospital Facilities and to remedy the lessening of competition resulting from the Acquisition as alleged in Plaintiff's Complaint.

## IV. CONFIDENTIAL BUSINESS INFORMATION

A.  Defendants shall not use, solicit, or access, directly or indirectly, any Confidential Business Information, and shall not disclose, provide, discuss, exchange, circulate, convey, or otherwise furnish Confidential Business Information, directly or indirectly, to or with any Person other than:

1.  As necessary to comply with the requirements of this Judgment or the Hold Separate Order;

2.  Subject to an appropriate confidentiality agreement, a Person that has shown an interest in acquiring the Divestiture Business and that UHS has reason to believe may be qualified to acquire the Divestiture Business;

3.  A Prospective Acquirer or Acquirer, or other Persons specifically authorized by such Prospective Acquirer or Acquirer to receive such information, regarding the Divestiture Business;

4.  Pursuant to a Divestiture Agreement;

5.  To enforce the terms of a Divestiture Agreement or prosecute or defend against any dispute or legal proceeding; or

6.  To comply with applicable law, regulations and other legal requirements.

B.  No later than five (5) days after the Acquisition, Defendants shall provide written notification of the restrictions, prohibitions and requirements of this Section and

Section IV of the Hold Separate Order to all of Defendants' employees, agents, and representatives located in the Las Vegas Area or, even if located outside such area, to Defendants' employees, agents, and representatives who had or have responsibilities in or relating to the Las Vegas Area or who had or have access to or possession, custody or control of any Confidential Business Information.  Defendants may provide such notification by e-mail with return receipt requested or similar transmission, and shall keep a file of any receipts or acknowledgments for one (1) year after the Closing Date.  Defendants shall provide a copy of such notification to the Acquirer.  Defendants shall maintain complete records of all such notifications at Defendants' corporate headquarters and shall provide an officer's certification to Plaintiff stating that such acknowledgment program has been implemented and is being complied with.  Defendants shall provide the Acquirer with copies of all certifications, notifications and reminders sent to Defendants' personnel.

C.  Defendants shall:

1.  No later than fourteen (14) days after the Acquisition, obtain, as a condition of continued employment post-divestiture, from each of Defendants' employees, agents, and representatives located in the Las Vegas Area or, even if located outside such area, from each of Defendants' employees, agents, and representatives who had or have responsibilities in or relating to the Las Vegas Area or who had or have access to or possession, custody or control of any Confidential Business Information, an executed confidentiality agreement that complies with the restrictions, prohibitions and requirements of this

Judgment and the Hold Separate Order; and

2. No later than thirty (30) days after the Acquisition, institute procedures and requirements and take such actions as are necessary to ensure that Defendants' personnel comply with the restrictions, prohibitions and requirements of this Section, including all actions that Defendants would take to protect their own trade secrets and confidential information.

## V.  RELEVANT EMPLOYEES

A.  Defendants shall, no later than ten (10) days of a request from a Prospective Acquirer, provide the Prospective Acquirer with the following information for each Relevant Employee, as and to the extent permitted by law:

1. Name, job title or position, date of hire and effective service date;

2. A specific description of the employee's responsibilities;

3. The base salary or current wages;

4. The most recent bonus paid, aggregate annual compensation for Defendants' last fiscal year and current target or guaranteed bonus, if any;

5. Employment status (i.e., active or on leave or disability; full-time or part-time);

6. Any other material terms and conditions of employment in regard to such employee that are not otherwise generally available to similarly situated employees; and

7. At the Prospective Acquirer's option, copies of all employee benefit plans and summary plan descriptions (if any) applicable to the Relevant Employee.

B.  Defendants shall, within a reasonable time after a request from a Prospective Acquirer, provide to the Prospective Acquirer an opportunity to meet personally and outside the presence or hearing of any employee or agent of any Defendant, with any one or more of the Relevant Employees, and to make offers of employment to any one or more of the Relevant Employees.

C.  Defendants shall not interfere, directly or indirectly with the hiring or employment by the Prospective Acquirer of any Relevant Employees, not offer any incentive to such employees to decline employment with the Prospective Acquirer, and not otherwise interfere with the recruitment of any Relevant Employee by the Prospective Acquirer.

D.  Defendants shall remove any impediments within the control of Defendants that may deter Relevant Employees from accepting employment with the Prospective Acquirer, including, but not limited to, removal of any non-compete or confidentiality provisions of employment or other contracts with Defendants that may affect the ability or incentive of such individuals to be employed by the Prospective Acquirer, and shall not make any counteroffer to a Relevant Employee who receives a written offer of employment from the Prospective Acquirer; provided, however, that nothing in this Judgment shall be construed to require Defendants to terminate the employment of any employee or prevent Defendants from continuing the employment of any employee.

E.  Defendants shall provide all Relevant Employees with reasonable financial incentives to continue in their positions until the Closing Date.  Such incentives shall include, but are not limited to, a continuation, until the Closing Date, of all employee benefits, including the funding of regularly scheduled raises and bonuses, and the vesting of pension benefits

(as permitted by law and for those Relevant Employees covered by a pension plan) offered by Defendants.

F.  Defendants shall not, for a period of two (2) years following the Closing Date, directly or indirectly, solicit or otherwise attempt to induce any of the Relevant Employees to terminate his or her employment with the Acquirer; provided however, that Defendants may:

1.  Advertise for employees in newspapers, trade publications, or other media, or engage recruiters to conduct general employee search activities, in either case not targeted specifically at Relevant Employees; or

2.  Hire Relevant Employees who apply for employment with Defendants, as long as such employees were not solicited by Defendants in violation of this Section; provided further however, that this Section shall not prohibit Defendants from making offers of employment to or employing any Relevant Employee if the Acquirer has notified Defendants in writing that the Acquirer does not intend to make an offer of employment to that employee, or where such an offer has been made and the employee has declined the offer, or where the employee's employment has been terminated by the Acquirer.

## VI. TRANSITIONAL SERVICES

At the request of an Acquirer, for a period not to exceed twelve (12) months, or as otherwise approved by Plaintiff, and in a manner (including pursuant to an agreement) that receives the prior approval of Plaintiff:

A. Defendants shall provide Transitional Services to the Acquirer sufficient to enable the Acquirer to operate Psychiatric Hospital Facilities and to provide Acute Inpatient Psychiatric Services in substantially the same manner that Defendants have operated such facilities and provided such services at the Psychiatric Hospital Facilities to be divested; and

B. Defendants shall provide the Transitional Services required by this Section at substantially the same level and quality as such services are provided by Defendants in connection with its operation of the Psychiatric Hospital Facilities to be divested.

Provided, however, that Defendants shall not (i) require the Acquirer to pay compensation for Transitional Services that exceeds the Direct Cost of providing such goods and services, or (ii) terminate its obligation to provide Transitional Services because of a material breach by the Acquirer of any agreement to provide such assistance except if Defendants are unable to provide such services due to such material breach.

## VII. DIVESTITURE TRUSTEE

A. If Defendants have not fully complied with the obligations imposed by Section III of this Judgment, Plaintiff may appoint a trustee ("Divestiture Trustee") to divest the required Divestiture Assets and perform Defendants' other obligations in a manner that satisfies the requirements of this Judgment.  In the event that Plaintiff brings an action pursuant to this Judgment or any statute enforced by Plaintiff, Defendants shall consent to the appointment of a Divestiture Trustee in such action to divest the required assets.  Neither the appointment of a Divestiture Trustee nor a decision not to appoint a Divestiture Trustee under this Section shall preclude Plaintiff from seeking civil penalties or any

other relief available to it, including a court-appointed Divestiture Trustee, pursuant to this Judgment or any other statute enforced by Plaintiff, for any failure by Defendants to comply with this Judgment.

B.  Plaintiff shall select the Divestiture Trustee, subject to the consent of Defendants, which consent shall not be unreasonably withheld.  The Divestiture Trustee shall be a person with experience and expertise in acquisitions and divestitures.  If Defendants have not opposed, in writing, including the reasons for opposing, the selection of any proposed Divestiture Trustee within ten (10) days after notice by the staff of Plaintiff to Defendants of the identity of any proposed Divestiture Trustee, Defendants shall be deemed to have consented to the selection of the proposed Divestiture Trustee.

   1.  Not later than ten (10) days after the appointment of a Divestiture Trustee, Defendants shall execute a trust agreement that, subject to the prior approval of Plaintiff, transfers to the Divestiture Trustee all rights and powers necessary to permit the Divestiture Trustee to effectuate the divestiture required by, and satisfy the additional obligations imposed by, this Judgment.

   2.  If a Divestiture Trustee is appointed by Plaintiff or this Court pursuant to this Section, Defendants shall consent to the following terms and conditions regarding the Divestiture Trustee's powers, duties, authority, and responsibilities:

       a.  Subject to the prior approval of Plaintiff, the Divestiture Trustee shall have the exclusive power and authority to effectuate the divestiture required by, and satisfy the additional obligations imposed by, this Judgment.

b.  The Divestiture Trustee shall have one (1) year after the date Plaintiff approves the trust agreement described herein to accomplish the divestiture, which shall be subject to the prior approval of Plaintiff.  If, however, at the end of the one (1) year period, the Divestiture Trustee has submitted a plan to satisfy the obligations of Section III of this Judgment, or believes that such obligations can be achieved within a reasonable time, the period may be extended by Plaintiff, or, in the case of a court-appointed Divestiture Trustee, by this Court; provided, however, that Plaintiff may extend the divestiture period only two (2) times.

c.  Subject to any demonstrated legally recognized privilege, the Divestiture Trustee shall have full and complete access to the personnel, books, records and facilities related to the relevant assets that are required to be divested by this Judgment and to any other relevant information, as the Divestiture Trustee may request.  Defendants shall develop such financial or other information as the Divestiture Trustee may request and shall cooperate with the Divestiture Trustee.  Defendants shall take no action to interfere with or impede the Divestiture Trustee's accomplishment of the divestiture.  Any delays caused by Defendants shall extend the time for divestiture under this Section for a time period equal to the delay, as determined by Plaintiff or, for a court-appointed Divestiture Trustee, by this Court.

d.  The Divestiture Trustee shall use commercially reasonable efforts to negotiate the most favorable price and terms available in each contract that is submitted to Plaintiff, subject to Defendants' absolute and unconditional obligation to divest expeditiously and at no minimum price.  The divestiture shall be made in the manner and to an Acquirer as required by this Judgment; provided, however, that if the Divestiture Trustee receives bona fide offers from more than one acquiring entity, and if Plaintiff determines to approve more than one such acquiring entity, the Divestiture Trustee shall divest to the acquiring entity selected by Defendants from among those approved by Plaintiff; provided further, however, that Defendants shall select such entity within five (5) days after receiving notification of Plaintiff's approval.

e.  The Divestiture Trustee shall serve, without bond or other security, at the cost and expense of Defendants, on such reasonable and customary terms and conditions as Plaintiff or this Court may set.  The Divestiture Trustee shall have the authority to employ, at the cost and expense of Defendants, such consultants, accountants, attorneys, investment bankers, business brokers, appraisers, and other representatives and assistants as are necessary to carry out the Divestiture Trustee's duties and responsibilities. The Divestiture Trustee shall account for all monies derived from the divestiture and all expenses incurred.  After approval by Plaintiff of the account of the Divestiture Trustee, including fees for the Divestiture

Trustee's services, all remaining monies shall be paid at the direction of
Defendants, and the Divestiture Trustee's power shall be terminated.  The
compensation of the Divestiture Trustee shall be based at least in
significant part on a commission arrangement contingent on the divestiture
of all of the relevant assets required to be divested by this Judgment.

f.  Defendants shall indemnify the Divestiture Trustee and hold the
Divestiture Trustee harmless against any losses, claims, damages,
liabilities, or expenses arising out of, or in connection with, the
performance of the Divestiture Trustee's duties, including all reasonable
fees of counsel and other expenses incurred in connection with the
preparation for, or defense of, any claim, whether or not resulting in any
liability, except to the extent that such losses, claims, damages, liabilities,
or expenses result from gross negligence, willful or wanton acts, or bad
faith by the Divestiture Trustee.

g.  The Divestiture Trustee shall have no obligation or authority to operate or
maintain the relevant assets required to be divested by this Judgment.

h.  The Divestiture Trustee shall report in writing to Defendants and to
Plaintiff every sixty (60) days concerning the Divestiture Trustee's efforts
to accomplish the divestiture.

i.  Defendants may require the Divestiture Trustee and each of the
Divestiture Trustee's consultants, accountants, attorneys and other
representatives and assistants to sign a customary confidentiality

agreement; provided, however, that such agreement shall not restrict the Divestiture Trustee from providing any information to Plaintiff.

C.  If Plaintiff determines that a Divestiture Trustee has ceased to act or failed to act diligently, Plaintiff may appoint a substitute Divestiture Trustee in the same manner as provided in this Section.

D.  Plaintiff or, in the case of a court-appointed Divestiture Trustee, this Court, may on its own initiative or at the request of the Divestiture Trustee issue additional orders or directions as may be necessary or appropriate to accomplish the divestiture required by this Judgment.

E.  The Divestiture Trustee appointed pursuant to this Section, may be the same person appointed as Hold Separate Trustee pursuant to the relevant provisions of the Hold Separate Order.

## VIII. DIVESTITURE AGREEMENT

A.  The Divestiture Agreement shall not limit or contradict, or be construed to limit or contradict, the terms of this Judgment, it being understood that nothing in this Judgment shall be construed to reduce any rights or benefits of any Acquirer or to reduce any obligations of Defendants under such agreements.

B.  Although not a public record, the Divestiture Agreement shall be incorporated by reference into this Judgment and made a part hereof.

C.  Defendants shall comply with all terms of the Divestiture Agreement, and any breach by Defendants of any term of the Divestiture Agreement constitutes a failure to comply with this Judgment.  If any term of the Divestiture Agreement varies from the terms of this

Judgment ("Judgment Term"), then to the extent that Defendants cannot fully comply with both terms, the Judgment Term shall determine Defendants' obligations under this Judgment.

D.  Defendants shall not modify or amend any material term of the Divestiture Agreement between the date Plaintiff approves the Divestiture Agreement and the Closing Date, without the prior approval of Plaintiff.  Notwithstanding any paragraph, section, or other provision of the Divestiture Agreement, for a period of five (5) years after the Closing Date, any modification of the Divestiture Agreement, without the approval of Plaintiff shall constitute a failure to comply with this Judgment.  Defendants shall provide written notice to Plaintiff of the modification no later than five (5) days following execution of the documents containing the modification, the need for the modification, and a description of the effect, if any, on Defendants' obligations under this Judgment; and, if Plaintiff rejects the modification, Defendants shall rescind it.

### IX. NOTIFICATION

A.  For the period that this Judgment is in effect, Defendants shall not, without providing advance written notification to Plaintiff, directly or indirectly:

1.  Acquire any stock, share, capital assets of or any interest, including any financial, security, loan, equity or management interest, in any Person that, at any time during the twelve (12) months immediately preceding such acquisition, was engaged in or is engaging in providing Acute Inpatient Psychiatric Services in the State of Nevada; or

2. Enter into any agreement or other arrangement to manage or otherwise control a Third Party Psychiatric Facility which during the twelve (12) months immediately preceding such agreement or arrangement, was engaged or is engaged in providing Acute Inpatient Psychiatric Services in the State of Nevada.

Provided, however, nothing herein shall be construed to require advance written notification if Defendants seek to open a new Psychiatric Hospital Facility or expand existing Acute Inpatient Psychiatric Services at one of the Defendants' Psychiatric Hospital Facilities in the State of Nevada.

B. If such transaction is subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Acts of 1975, as amended, 15 U.S.C. § 18a (the "HSR Act"), the notification shall be in the form required by the HSR Act. Otherwise, such notice shall include: the parties to the transaction, transaction value, description of the transaction, contact person for the transaction, a copy of the agreement to merge or acquire, and copies of any management or strategic plans discussing the proposed transaction. Notification shall be sent via overnight express delivery to the following address: State of Nevada, Office of Nevada Attorney General; Bureau of Consumer Protection; Attention: Antitrust Unit; 555 East Washington Ave., Suite 3900; Las Vegas, Nevada 89101.

C. Notification shall be provided at least thirty (30) days prior to acquiring such interest. If within the 30-day period after notification, Plaintiff makes a written request for additional information, Defendants shall not consummate the proposed transaction or agreement until thirty (30) calendar days after submitting all such additional information.

D. Defendants shall also notify Plaintiff at least thirty (30) days prior to:

    1.  Any proposed dissolution of any Defendant;

    2.  Any proposed acquisition, merger or consolidation of any Defendant, if such transaction affects Defendants' facilities in the State of Nevada;

    3.  Any other change in Defendant, including, but not limited to, assignment and the creation of dissolution of subsidiaries, if such change may affect compliance obligations arising out of this Judgment.

## X. ATTORNEYS FEES AND COSTS

A. Defendants shall reimburse to Plaintiff all reasonable attorneys fees and costs incurred by Plaintiff in reviewing the Acquisition.  The total reimbursements to Plaintiff for attorney fees and costs for this acquisition review and all matters related thereto up to and including entry of this Judgment shall be one hundred seventy one thousand four hundred fifty five dollars ($171,455.00).  Such reimbursement shall be made within forty (40) days of presentation of a request for reimbursement in writing.

B. Where Plaintiff engages in investigations as described in Section XI, or where Plaintiff investigates a Prospective Acquirer, an Acquirer, or the appropriate divestiture of the Divestiture Assets, the rate for such attorneys fees shall be $350 per hour, and the rate for paralegals shall be $100 per hour.  Such reimbursement shall be made within forty (40) days of presentation of a request for reimbursement in writing.

C. Plaintiff shall provide the following information relating to a request for reimbursement of attorney fees and costs under Paragraph B of this Section: (a) identification of all persons employed by, or contracting with, Plaintiff by name and job title; (b) total

number of hours worked per person for which Plaintiff seeks reimbursement for work in whole or in part; (c) a summary description of each person's work, and (d) the hourly rate applied to each person's work.

## XI. COMPLIANCE AND MONITORING

A.  Within thirty (30) days after entry of this Judgment, and every sixty (60) days thereafter until Defendants have complied with Section III this Judgment, Defendants shall submit to Plaintiff a verified written report setting forth in detail the manner and form in which they intend to comply, are complying, and have complied with Section III of this Judgment.  Defendants shall include in their compliance reports, among other things that are required from time to time, a full description of the efforts being made to comply with Section III of this Judgment, including a description of all substantive contacts or negotiations for the divestitures and the identity of all parties contacted.  Defendants shall include in their compliance reports copies of all written communication to and from such parties, all internal memoranda, and all reports and recommendations concerning the divestiture.

B.  One (1) year after entry of this Judgment, annually on the anniversary of that date for the period that this Judgment is in effect, and at other times as Plaintiff may require, Defendants shall file verified written reports with Plaintiff setting forth in detail the manner and form in which they intend to comply, are complying, and have complied with this Judgment.

C.  For purposes of determining or securing compliance with this Judgment, and subject to any legally recognized privilege, Plaintiff may issue an Investigative Demand pursuant to

NRS 598A.100.  Defendants shall timely and fully comply with any such Investigative

Demands. Furthermore, and subject to any legally recognized privilege, and upon written

request and upon five (5) days notice to Defendants made to its principal United States or

State of Nevada offices, registered office of its United States subsidiary, or its

headquarters address, Defendants shall, without restraint or interference, permit any duly

authorized representative of Plaintiff:

1. Access, during business office hours of Defendants and in the presence of

   counsel, to all facilities and access to inspect and copy all books, ledgers,

   accounts, correspondence, memoranda and all other records and documents in the

   possession or under the control of Defendants related to compliance with this

   Judgment, which copying services shall be provided by Defendants at the request

   of the authorized representative(s) of Plaintiff and at the expense of Defendants;

   and

2. To interview, either informally or on the record, officers, directors, or employees

   of Defendants, who may have their individual counsel present, regarding such

   matters.

D. Upon the written request of Plaintiff, Defendants shall submit written reports, under oath

   if requested, relating to any of the matters contained in this Judgment as may be

   requested.  Such written reports, at Plaintiff's discretion, may require Defendants to

   conduct, at Defendants' cost, an independent audit or analysis relating to any of the

   matters contained in this Judgment.

E.  If Plaintiff, after consultation with Defendants, opens a formal investigation into an alleged violation of this Judgment, Defendants shall pay for the reasonable costs of investigations, reviews, audits or examinations conducted by Plaintiff regarding matters contained in and compliance with this Judgment.  This provision includes the reasonable costs of retained accountants, economists, actuaries, attorneys, consultants, and other experts reasonably necessary to assist in the conduct of any review, audit or examination once an investigation is opened, but shall not include costs of reviewing compliance reports and information submitted by Defendants prior to a formal investigation.

F.  No information or documents obtained by the means provided in this Section or as otherwise required by this Judgment and which have been designated in good faith as "Confidential" by Defendants, shall be divulged by Plaintiff to any person other than the authorized representatives of Plaintiff, and their consultants, except in the course of legal proceedings as required by a court of proper jurisdiction, for the purpose of securing compliance with this Judgment (including disclosure of documents at interviews on the record), to the Commission, or as otherwise required by law.

G.  If at the time information or documents are furnished by Defendants to Plaintiff, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then Plaintiff shall give Defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XII. VIOLATIONS AND ENFORCEMENT

A.  It shall be a violation of this Judgment if Defendants fail to abide by the terms of this Judgment or the Hold Separate Order.

B.  Subject to the requirements of this Section, Plaintiff may petition the Court for relief as a result of a violation of this Judgment by filing a "Notice of Violation of Judgment" which shall set forth the alleged violation and the relief sought by Plaintiff.

C.  For any violations of this Judgment committed by Defendants, Plaintiff may seek the following remedies:

  1.  Payment of penalties in accordance with NRS 598A.170;

  2.  A civil contempt of court order from the Court retaining jurisdiction over the interpretation, modification and enforcement of this Judgment, and all remedies provided by law for obtaining such order;

  3.  Equitable and injunctive relief, including, but not limited to, disgorgement of profits and restitution;

  4.  Any other relief that the Court deems appropriate.

D.  All relief requested by Plaintiff for violation of the provisions of this Judgment shall be supported by evidence presented to the Court in whatever form required by the Court, applying substantive Nevada law in interpretation and enforcement.

E.  All monetary penalties paid pursuant to this Section shall be deposited in compliance with NRS 598A.260.  Defendants shall also pay to Plaintiff its reasonable attorneys fees and costs incurred if Plaintiff is the prevailing party in a contested action to interpret, modify or enforce this Judgment.

F.  Plaintiff shall not pursue an enforcement action under this Section until the following has

occurred:

   1.  Plaintiff has given Defendants notice of the alleged violation(s) in writing;

   2.  Defendants have had a period of at least thirty (30) days to (a) respond to and cure

       the alleged violation(s); and/or (b) provide written notice disputing the alleged

       violation or presenting a cure to Plaintiff; and

   3.  The Parties have had a period of ten (10) days after Defendants have provided

       notice of dispute or notice of cure to meet and confer regarding the alleged

       violation(s) and the Parties' responses.  Such meet and confer may occur in

       person, by telephone, or in writing.

G.  If Defendants fail to respond to and cure, or fail to provide written notice of dispute,

Plaintiff may immediately seek relief from the Court.  The Parties may extend the

timelines in this Section by mutual consent in writing.  Plaintiff may informally notify

Defendants of receipt of information alleging a violation of this Judgment if, in Plaintiff's

judgment, such notification could likely result in a prompt resolution of the alleged

violation.

H.  The remedies in this Judgment are in addition to all remedies available to Plaintiff under

federal and state law.  Nothing in this Judgment shall prohibit or in any way limit

Plaintiff from seeking all damages, fines, penalties and remedies for Defendants'

conduct, actions, transactions, mergers or acquisitions that is/are otherwise unlawful

under federal or state law, even if such conduct, actions, transactions, mergers or

acquisitions may also violate this Judgment.

## XIII. RELATED ACTION

Consistent with Plaintiff's enforcement policy, Plaintiff will undertake to discuss matters with the Commission relating to decisions regarding compliance reports, approval of an Acquirer, or the selection, appointment and replacement of trustees, before such decisions are made by Plaintiff.  If there is a departure between Plaintiff and the Commission regarding such decisions, Plaintiff shall notify Defendants and meet and confer with Defendants before implementing such decision.

## XIV. GENERAL PROVISIONS

A.  This Judgment shall terminate five (5) years from the date of entry; provided, however, that this Judgment may remain in effect after completion of such five (5) year period solely for the purpose of determining or enforcing compliance during its five-year effective period.

B.  This Court retains jurisdiction to enable either Party to this Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions. Except as provided in Section VII of the Hold Separate Order, the Parties shall meet and confer on the matter(s) that would be presented to the Court for modification or enforcement of this Judgment, or punishment pursuant to this Judgment.

C.  If any part of this Judgment is hereafter adjudged by this Court to be unenforceable, the remaining provisions of this Judgment shall stay in full force and effect.

BASED UPON THE RECORD BEFORE THIS COURT, the Court finds that entry of this Judgment fair, equitable and in the public interest.

IT IS SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE

DATED: _December 22, 2010_____

# EXHIBIT B

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **THE STATE OF NEVADA by its ATTORNEY GENERAL CATHERINE CORTEZ MASTO**<br><br>Plaintiff,<br><br>v.<br><br>**UNIVERSAL HEALTH SERVICES, INC., ALAN B. MILLER, and PSYCHIATRIC SOLUTIONS, INC.**<br><br>Defendants. | Case No.: 2:10-cv-01984<br><br>**ORDER TO HOLD SEPARATE AND MAINTAIN ASSETS** |

WHEREAS, Plaintiff State of Nevada, through its Attorney General, after having initiated an antitrust investigation of the proposed acquisition of Psychiatric Solutions, Inc. ("PSI") by Universal Health Services, Inc. ("UHS"), an entity controlled by Alan B. Miller, hereinafter referred to collectively as Defendants, filed its Complaint on November 15, 2010 alleging violations of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, and the Nevada Unfair Trade Practice Act, NRS 598A *et seq.*;

AND WHEREAS, Defendants agree that this Court has jurisdiction over them and the subject matter in this action;

AND WHEREAS, Plaintiff and Defendants, through their attorneys, have consented to the entry of a Final Judgment ("Judgment") and this Order to Hold Separate and Maintain Assets ("Hold Separate Order") without trial or adjudication of any issue of fact or law and without the Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, the essence of the Judgment is the prompt and certain divestiture of certain assets by Defendants to ensure that competition is not substantially lessened in the market of Acute Inpatient Psychiatric Services in the Las Vegas Area (both defined therein), and to provide other relief as described therein;

AND WHEREAS, the essence of the Hold Separate Order is to preserve the assets to be divested as viable, competitive, and ongoing businesses independent of Defendants until the divestitures required by the Judgment are achieved, and as further described in Paragraph III(E) of this Hold Separate Order;

AND WHEREAS, Defendants agree to be bound by the provisions of the Judgment and this Hold Separate Order pending its approval by the Court and thereafter;

AND WHEREAS, Defendants have entered into a similar order with the Federal Trade Commission ("Commission") in a Related Action (defined in the Judgment), to address the same allegations set forth by Plaintiff in its Complaint;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, without any admission or finding of wrongdoing or violation of any law, and upon consent of the Parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

A.  This Court has jurisdiction over the subject matter of, and each of the Parties to, this action.  The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18 and under NRS 598A.060(1)(f), alleged in the Complaint as a pendent state claim.

B.  Defendant Universal Health Services, Inc. is a corporation organized, existing and doing business under and by virtue of the laws of Delaware, with its corporate head offices and principal place of business located at 367 South Gulph Road, PO Box 61558, King of Prussia, Pennsylvania 19406-0958.

C.  Defendant Alan B. Miller is a natural person with his offices and principal place of business located at 367 South Gulph Road, PO Box 61558, King of Prussia, Pennsylvania 19406-0958.

D.  Defendant Psychiatric Solutions, Inc. is a corporation organized, existing and doing business by virtue of the laws of Delaware, with its corporate head offices and principal place of business located at 6640 Carothers Parkway, Suite 500, Franklin, Tennessee 37067.

## II.  DEFINITIONS

As used in this Hold Separate Order, the following definitions, and all other definitions used in the Judgment, shall apply:

A.  "Acquisition Date" means the date on which Defendant Universal Health Services, Inc., directly or indirectly, acquires a controlling interest in Defendant Psychiatric Solutions, Inc.

B.  "Judgment" means the Final Judgment entered in this action.

C.  "Hold Separate Business" means the Divestiture Assets and Divestiture Business as defined in the Judgment.

D.  "Hold Separate Employees" means all full-time employees, part-time employees, contract employees, and independent contractors, whose duties, at any time during the

ninety (90) days preceding the Acquisition or any time after the Acquisition related or

relate primarily to the Divestiture Business, a complete list of whom has been

submitted to and approved by the Hold Separate Trustee and Manager, in consultation

with Plaintiff, no later than three (3) days after the Acquisition.

E.   "Hold Separate Order" means this Order to Hold Separate and Maintain Assets.

F.   "Hold Separate Period" means the period during which the Hold Separate Order is in

effect, which shall begin on the Acquisition Date and terminate pursuant to Section

IX(A) of this Hold Separate Order.

G.   "Hold Separate Trustee" means the Person appointed pursuant to Section III of this

Hold Separate Order.

H.   "Manager" means the Person or Persons appointed pursuant to Section III of this

Hold Separate Order.

I.   "Support Service Employees" means the confidential list of persons provided by

Defendants to Plaintiff no later than three (3) days after the Acquisition; provided,

however, at any time during the Hold Separate Period, Defendants may, in

consultation with the Hold Separate Trustee, modify the list of Support Service

Employees.

J.   "Support Services" means assistance with respect to the operation of the Hold

Separate Business, including, but not limited to, (i) human resources and

administrative services such as payroll processing and employee benefits; (ii)

financial accounting services; (iii) reimbursement department support (i.e., Medicare

cost reports); (iv) tax-related support; (v) treasury support; (vi) insurance support;

(vii) clinical information systems support; (viii) information technology software and support services; (ix) participation in group purchasing arrangements; (x) online training programs; (xi)  legal services; and (xii) federal and state regulatory compliance support.

### III. HOLD SEPARATE AND MAINTAIN ASSETS

During the Hold Separate Period:

A.  Defendants shall:

   1.  Hold the Hold Separate Business separate, apart, and independent of Defendants' other businesses and assets as required by this Hold Separate Order and shall vest the Hold Separate Business with all rights, powers, and authority necessary to conduct its business; and

   2.  Not exercise direction or control over, or influence directly or indirectly, the Hold Separate Business or any of its operations, the Managers, or the Hold Separate Trustee, except to the extent that Defendants must exercise direction and control over the Hold Separate Business as is necessary to ensure compliance with this Hold Separate Order, the Judgment, and all applicable laws.

B.  Defendants shall take all actions necessary to maintain and ensure the continued maintenance of the viability, marketability and competitiveness of the Hold Separate Business, and to prevent the destruction, removal, wasting, deterioration, or impairment of any of the assets, except for ordinary wear and tear, and shall not sell, transfer, encumber or otherwise impair the Hold Separate Business (except as required by the Judgment).

C. Defendants shall hold the Hold Separate Business separate, apart, and independent of its

    other operations on the following terms and conditions:

      1. At any time after Defendants sign the Agreement to Abide by Final Judgment and

          Order to Hold Separate and Maintain Assets, Plaintiff may appoint Robert H.

          Osburn as Hold Separate Trustee to monitor the operations of the Hold Separate

          Business and ensure that Defendants comply with their obligations as required by

          this Hold Separate Order and the Judgment:

            a. Plaintiff shall select the Hold Separate Trustee, subject to the consent of

                the Defendants, which consent shall not be unreasonably withheld.  If

                Defendants have not opposed in writing, including the reasons for

                opposing, the selection of any proposed trustee within ten (10) business

                days after notice by Plaintiff's staff in this action and the Commission's

                staff in the Related Action to Defendants of the identity of any proposed

                Hold Separate Trustee, Defendants shall be deemed to have consented to

                the selection of the proposed trustee.

            b. The Hold Separate Trustee shall have the responsibility for monitoring the

                organization of the Hold Separate Business; supervising the management

                of the Hold Separate Business by the Manager or Managers; maintaining

                the independence of the Hold Separate Business; and monitoring

                Defendants' compliance with their obligations pursuant to the Hold

                Separate Order, including, without limitation, maintaining the viability,

marketability and competitiveness of the Hold Separate Business pending
divestiture.

c.  No later than three (3) days after appointment of the Hold Separate
Trustee, Defendants shall execute an agreement that, subject to Plaintiff's
prior approval, transfers to and confers upon the Hold Separate Trustee all
rights, powers, and authority necessary to permit the Hold Separate
Trustee to perform his or her duties and responsibilities pursuant to this
Hold Separate Order, in a manner consistent with the purposes of the
Judgment and this Hold Separate Order, and shall require that the Hold
Separate Trustee act in a fiduciary capacity for the benefit of Plaintiff.

d.  Subject to all applicable laws and regulations, the Hold Separate Trustee
shall have full and complete access to all personnel, books, records,
documents and facilities of the Hold Separate Business, and to any other
relevant information as the Hold Separate Trustee may reasonably request
including, but not limited to, all documents and records kept by
Defendants in the ordinary course of business that relate to the Hold
Separate Business.  Defendants shall develop such financial or other
information as the Hold Separate Trustee may reasonably request and shall
cooperate with the Hold Separate Trustee.

e.  Defendants shall take no action to interfere with or impede the Hold
Separate Trustee's ability to monitor Defendants' compliance with this
Hold Separate Order and the Judgment, or otherwise to perform his or her

duties and responsibilities consistent with the terms of this Hold Separate Order.

f.  The Hold Separate Trustee shall have the authority to employ, at the cost and expense of Defendants, such consultants, accountants, attorneys, and other representatives and assistants as are reasonably necessary to carry out the Hold Separate Trustee's duties and responsibilities.

g.  Plaintiff may require the Hold Separate Trustee and each of the Hold Separate Trustee's consultants, accountants, attorneys, and other representatives and assistants to sign an appropriate confidentiality agreement relating to materials and information received from Plaintiff in connection with performance of the Hold Separate Trustee's duties.

h.  Defendants may require the Hold Separate Trustee and each of the Hold Separate Trustee's consultants, accountants, attorneys, and other representatives and assistants to sign an appropriate confidentiality agreement; provided, however, that such agreement shall not restrict the Hold Separate Trustee from providing any information to Plaintiff.

i.  The Hold Separate Trustee shall serve, without bond or other security, at the cost and expense of Defendants, on reasonable and customary terms commensurate with the person's experience and responsibilities.

j.  Defendants shall indemnify the Hold Separate Trustee and hold him or her harmless against any losses, claims, damages, liabilities, or expenses arising out of, or in connection with, the performance of the Hold Separate

Trustee's duties, including all reasonable fees of counsel and other expenses incurred in connection with the preparation for, or defense of any claim, whether or not resulting in any liability, except to the extent that such liabilities, losses, damages, claims, or expenses result from gross negligence or willful misconduct by the Hold Separate Trustee.

k.  Thirty (30) days after the Acquisition Date, and every thirty (30) days thereafter until the Hold Separate Order terminates, the Hold Separate Trustee shall report in writing to Plaintiff concerning the efforts to accomplish the purposes of this Hold Separate Order and Defendants' compliance with their obligations under the Hold Separate Order and the Judgment.  Included within that report shall be the Hold Separate Trustee's assessment of the extent to which the Hold Separate Business is meeting (or exceeding) its projected goals as are reflected in operating plans, budgets, projections or any other regularly prepared financial statements.

l.  If the Hold Separate Trustee ceases to act or fails to act diligently and consistent with the purposes of this Hold Separate Order, Plaintiff may appoint a substitute Hold Separate Trustee consistent with the terms of this Hold Separate Order.

m. The Hold Separate Trustee shall serve until the day after the Closing Date; provided, however, that Plaintiff may extend or modify this period as may

be necessary or appropriate to accomplish the purposes of the Judgment and this Hold Separate Order.

2.  No later than five (5) days after the Acquisition Date, Defendants shall appoint a Manager or Managers, approved by the Hold Separate Trustee in consultation with Plaintiff, from among the current employees of the Hold Separate Business to manage and maintain the operations of the Hold Separate Business in the regular and ordinary course of business and in accordance with past practice:

   a.  Each Manager shall report directly and exclusively to the Hold Separate Trustee and shall manage the Hold Separate Business independently of the management of Defendants and their other businesses.  No Manager shall be involved, in any way, in the operations of the other businesses of Defendants during the term of this Hold Separate Order.

   b.  Each Manager shall have the authority to employ, at the cost and expense of Defendants, such consultants, accountants, attorneys, and other representatives and assistants as are reasonably necessary to carry out the Manager's duties and responsibilities.  Nothing contained herein shall preclude any of the Managers from contacting or communicating directly with Plaintiff's staff either at the request of Plaintiff's staff or in the discretion of the Manager.

   c.  No later than three (3) days after appointment of a Manager, Defendants shall enter into a management agreement with that Manager that, subject to the prior approval of the Hold Separate Trustee, in consultation with

Plaintiff's staff, transfers all rights, powers, and authority necessary to permit that Manager to perform his or her duties and responsibilities pursuant to this Hold Separate Order, in a manner consistent with the purposes of the Judgment and this Hold Separate Order.

d. No Manager shall make material changes in the ongoing operations of the Hold Separate Business except with the approval of the Hold Separate Trustee, in consultation with Plaintiff's staff.

e. Each Manager shall have the authority, in consultation with the Hold Separate Trustee, to remove Hold Separate Employees and replace them with others of similar experience or skills.  If any Hold Separate Employee ceases to act or fails to act diligently and consistent with the purposes of this Hold Separate Order, the Manager, in consultation with the Hold Separate Trustee, may request Defendants to, and Defendants shall, appoint a substitute Person, which Person the Manager shall have the right to approve.

f. In addition to Hold Separate Employees, each Manager may, in consultation with the Hold Separate Trustee, employ such Persons as are reasonably necessary to assist the Manager in managing the Hold Separate Business.

g. Defendants shall provide each Manager with reasonable financial incentives to undertake this position. Such incentives shall include a continuation of all employee benefits, including regularly scheduled

raises, bonuses, vesting of pension benefits (as permitted by law), and

additional incentives as may be necessary to assure the continuation and

prevent any diminution of the Hold Separate Business' viability,

marketability and competitiveness until the Closing Date, and as may

otherwise be necessary to achieve the purposes of the Judgment and this

Hold Separate Order.

h.  The Hold Separate Trustee shall be permitted, in consultation with

Plaintiff, to remove a Manager for cause. Within three (3) days of such

removal, Defendants shall appoint a replacement Manager on the same

terms and conditions as provided in this Hold Separate Order.  In the event

that a Manager voluntarily ceases to act as a Manager, then Defendants

shall appoint a substitute Manager within three (3) days on the same terms

and conditions as provided in this Hold Separate Order.

i.  Each Manager shall serve, without bond or other security, at the cost and

expense of Defendants, on reasonable and customary terms commensurate

with the person's experience and responsibilities.

j.  Defendants shall indemnify each Manager and hold him or her harmless

against any losses, claims, damages, liabilities, or expenses arising out of,

or in connection with, the performance of the Manager's duties, including

all reasonable fees of counsel and other expenses incurred in connection

with the preparation for, or defense of any claim, whether or not resulting

in any liability, except to the extent that such liabilities, losses, damages,

claims, or expenses result from gross negligence or willful misconduct by the Manager.

3. The Hold Separate Business shall be staffed with sufficient employees to maintain the viability and competitiveness of the Hold Separate Business. To the extent that such employees leave or have left the Hold Separate Business prior to the Closing Date of the Divestiture Assets, the Manager, in consultation with the Hold Separate Trustee, may replace departing or departed employees with persons who have similar experience and expertise or determine not to replace such departing or departed employees.

4. Defendants shall provide the Hold Separate Business with sufficient financial and other resources as are appropriate in the judgment of the Hold Separate Trustee:

   a. To operate the Hold Separate Business at least as it is currently operated (including efforts to generate new business) consistent with the practices of the Hold Separate Business in place prior to the Acquisition Date;

   b. To perform all maintenance to, and replacements or remodeling of, the assets of the Hold Separate Business in the ordinary course of business and in accordance with past practice and with current plans;

   c. To carry on during the Hold Separate Period such capital projects and physical plant improvements as are already under way for which all necessary regulatory and legal approvals have been obtained, including but not limited to existing or planned renovation, remodeling, and expansion projects; and

d.  To maintain the viability, competitiveness, and marketability of the Hold Separate Business.

Such financial resources to be provided to the Hold Separate Business shall include, but shall not be limited to, (i) general funds, (ii) capital, (iii) working capital, and (iv) reimbursement for any operating losses, capital losses, or other losses; provided, however, that, consistent with the purposes of the Judgment and in consultation with the Hold Separate Trustee, the Manager may reduce in scale or pace any capital or research and development project, or substitute any capital or research and development project for another of the same cost.

5.  In connection with Support Services not included within the Hold Separate Business:

a.  Defendants shall continue to provide, or offer to provide, the same Support Services to the Hold Separate Business as are being provided to the Hold Separate Business by Defendants as of the date the Agreement to Abide by Final Judgment and Order to Hold Separate and Maintain Assets is signed by Defendants;

b.  For Support Services that Defendants provided to the Hold Separate Business as of the date the Agreement to Abide by Final Judgment and Order to Hold Separate and Maintain Assets is signed by Defendants, Defendants may charge no more than the same price, if any, charged by Defendants for such Support Services as of the date the Agreement to

Abide by Final Judgment and Order to Hold Separate and Maintain Assets
is signed by Defendants;

c. For any other Support Services that Defendants may provide to the Hold
Separate Business, Defendants may charge no more than Defendants'
Direct Cost for the same or similar Support Services;

d. Support Service Employees must retain and maintain all Confidential
Business Information of the Hold Separate Business on a confidential
basis, and, except as is permitted by the Judgment and this Hold Separate
Order, such persons shall be prohibited from providing, discussing,
exchanging, circulating, or otherwise furnishing any such information to
or with any person whose employment involves the management or
operation of any of Defendants' businesses or activities other than the
Hold Separate Business.  As required by Paragraph III(C)(6) below,
Support Service Employees shall also execute confidentiality agreements
prohibiting the disclosure of any Confidential Business Information of the
Hold Separate Business, except as permitted by the Judgment and this
Hold Separate Order; and

e. Notwithstanding the above, the Hold Separate Business shall have, at the
option of the Manager and in consultation with the Hold Separate Trustee,
the ability to acquire Support Services from Third Parties.

6. Defendants shall cause the Hold Separate Trustee, each Manager, and each of
Defendants' employees (excluding those employed in the Hold Separate

Business) having access to Confidential Business Information of or pertaining to the Hold Separate Business to submit to Plaintiff a signed statement that the individual will maintain the confidentiality required by the terms and conditions of this Hold Separate Order. These individuals must retain and maintain all Confidential Business Information of or pertaining to the Hold Separate Business on a confidential basis and, except as is permitted by this Hold Separate Order or the Judgment, such Persons shall be prohibited from disclosing, providing, discussing, exchanging, circulating, or otherwise furnishing any such information to or with any other Person whose employment involves the management or operations of any of Defendants' businesses or activities other than the Hold Separate Business.

7. Except for the Managers and Hold Separate Employees, and except to the extent provided in this Hold Separate Order, Defendants shall not permit any other of its employees, officers, or directors to be involved in the operations of the Hold Separate Business.

8. Defendants' employees (excluding the Hold Separate Employees and Support Service Employees) shall not receive, or have access to, or use or continue to use any Confidential Business Information except

    a. As required by law; and

    b. To the extent necessary information is exchanged

        i.   In the course of consummating the Acquisition;

    ii.   In negotiating agreements to divest assets pursuant to the Judgment and engaging in related due diligence;

   iii.   In complying with or as permitted by this Hold Separate Order or the Judgment

   iv.   In overseeing compliance with policies and standards concerning the safety, health and environmental aspects of the operations of the Hold Separate Business and the integrity of the financial controls of the Hold Separate Business;

    v.   In defending legal claims, investigations or enforcement actions threatened or brought against or related to the Hold Separate Business; or

   vi.   In obtaining legal advice.

Nor shall any Manager or any Hold Separate Employees receive or have access to, or use or continue to use, any confidential business information relating to Defendants' businesses (not subject to the Hold Separate Order), except such information as is necessary to maintain and operate the Hold Separate Business.  Notwithstanding the above, Defendants may receive aggregate financial and operational information relating to the Hold Separate Business only to the extent necessary to allow Defendants to comply with the requirements and obligations of the laws and regulations of the United States and other countries, to prepare consolidated financial reports, tax returns, reports required by securities

laws, and personnel reports, and to comply with this Hold Separate Order or in complying with or as permitted by the Judgment.  Any such information that is obtained pursuant to this Paragraph shall be used only for the purposes set forth in this Paragraph.

9.   Defendants and the Hold Separate Business shall jointly implement, and at all times during the Hold Separate Period maintain in operation, a system, as approved by the Hold Separate Trustee, of access and data controls to prevent unauthorized access to or dissemination of Confidential Business Information of the Hold Separate Business, including, but not limited to, the opportunity by the Hold Separate Trustee, on terms and conditions agreed to with Defendants, to audit Defendants' networks and systems to verify compliance with this Hold Separate Order.

10.  No later than ten (10) days after the Acquisition Date, Defendants shall establish written procedures, subject to the approval of the Hold Separate Trustee, covering the management, maintenance, and independence of the Hold Separate Business consistent with the provisions of this Hold Separate Order.

11.  No later than ten (10) days after the Acquisition Date, Defendants shall circulate to Hold Separate Employees, and to persons who are employed in Defendants' businesses that compete with the Hold Separate Business, a notice of this Hold Separate Order and the Judgment, in a form approved by the Hold Separate Trustee in consultation with Plaintiff's staff.

D.  Defendants shall provide each Hold Separate Employee with reasonable financial incentives to continue in his or her position consistent with past practices and/or as may be necessary to preserve the marketability, viability and competitiveness of the Divestiture Assets pending divestiture. Such incentives shall include a continuation of all employee benefits, including funding of regularly scheduled raises and bonuses, vesting of pension benefits (as permitted by law), and additional incentives as may be necessary to assure the continuation and prevent any diminution of the viability, marketability and competitiveness of the Divestiture Assets until the applicable Divestiture Date, and as may otherwise be necessary to achieve the purposes of this Hold Separate Order.

E.  The purpose of this Hold Separate Order is to: (1) preserve the assets and businesses within the Hold Separate Business as viable, competitive, and ongoing businesses independent of Defendants until the divestitures required by the Judgment are achieved; (2) assure that no Confidential Business Information is exchanged between Defendants and the Hold Separate Business, except in accordance with the provisions of this Hold Separate Order and the Judgment; (3) prevent interim harm to competition pending the divestiture and other relief; and (4) maintain the full economic viability, marketability and competitiveness of the Divestiture Assets, and prevent the destruction, removal, wasting, deterioration, or impairment of any of the Divestiture Assets except for ordinary wear and tear.

## IV. CONFIDENTIAL BUSINESS INFORMATION

A.  Defendants shall not use, solicit, or access, directly or indirectly, any Confidential Business Information, and shall not disclose, provide, discuss, exchange, circulate,

convey, or otherwise furnish such Confidential Business Information, directly or indirectly, to or with any Person other than:

1. As necessary to comply with the requirements of the Judgment and this Hold Separate Order;

2. Subject to an appropriate confidentiality agreement, a Person that has shown an interest in acquiring the Divestiture Business and that UHS has reason to believe may be qualified to acquire the Divestiture Business;

3. A Prospective Acquirer or Acquirer, or other Persons specifically authorized by such Prospective Acquirer or Acquirer to receive such information, regarding the Divestiture Business;

4. Pursuant to a Divestiture Agreement;

5. To enforce the terms of a Divestiture Agreement or prosecute or defend against any dispute or legal proceeding; or

6. To comply with applicable law, regulations and other legal requirements.

B. No later than five (5) days after the Acquisition, Defendants shall provide written notification of the restrictions, prohibitions and requirements of this Section and Section IV of the Judgment to all of Defendants' employees, agents, and representatives located in the Las Vegas Area or, even if located outside the Las Vegas Area, to Defendants' employees, agents, and representatives who had or have responsibilities in or relating to the Las Vegas Area or who had or have access to or possession, custody or control of any Confidential Business Information.  Defendants may provide such notification by e-mail with return receipt requested or similar

transmission, and must keep a file of any receipts or acknowledgments for one (1) year after the respective Closing Date.  Defendants shall provide a copy of such notification to the Acquirer.  Defendants shall maintain complete records of all such notifications at Defendants' corporate headquarters and shall provide an officer's certification to Plaintiff, stating that such acknowledgment program has been implemented and is being complied with.  Defendants shall provide the Acquirer with copies of all certifications, notifications and reminders sent to Defendants' personnel.

C. Defendants shall:

1. No later than fourteen (14) days after the Acquisition, obtain, as a condition of continued employment post-divestiture, from each of Defendants' employees, agents, and representatives located in the Las Vegas Area or, even if located outside the Las Vegas Area, from each of Defendants' employees, agents, and representatives who had or have responsibilities in or relating to the Las Vegas Area or who had or have access to or possession, custody or control of any Confidential Business Information an executed confidentiality agreement that complies with the restrictions, prohibitions and requirements of the Judgment and this Hold Separate Order; and

2. No later than thirty (30) days after the Acquisition, institute procedures and requirements and take such actions as are necessary to ensure that Defendants' personnel comply with the restrictions, prohibitions and requirements of this Section, including all actions that Defendants would take to protect their own trade secrets and confidential information.

## V.  RELEVANT EMPLOYEES

A.  Defendants shall, no later than ten (10) days after a request from a Prospective

Acquirer, provide the Prospective Acquirer with the following information for each

Relevant Employee, as and to the extent permitted by law:

   1.   Name, job title or position, date of hire and effective service date;

   2.   A specific description of the employee's responsibilities;

   3.   The base salary or current wages;

   4.   The most recent bonus paid, aggregate annual compensation for Defendants'

        last fiscal year and current target or guaranteed bonus, if any;

   5.   Employment status (i.e., active or on leave or disability; full-time or part-

        time);

   6.   Any other material terms and conditions of employment in regard to such

        employee that are not otherwise generally available to similarly situated

        employees; and

   7.   At the Prospective Acquirer's option, copies of all employee benefit plans and

        summary plan descriptions (if any) applicable to the Relevant Employee.

B.  Defendants shall, within a reasonable time after a request from a Prospective

Acquirer, provide to the Prospective Acquirer an opportunity to meet personally and

outside the presence or hearing of any employee or agent of any Defendant, with any

one or more of the Relevant Employees, and to make offers of employment to any

one or more of the Relevant Employees.

C.  Defendants shall not interfere, directly or indirectly with the hiring or employment by the Prospective Acquirer of any Relevant Employees, not offer any incentive to such employees to decline employment with the Prospective Acquirer, and not otherwise interfere with the recruitment of any Relevant Employee by the Prospective Acquirer.

D.  Defendants shall remove any impediments within the control of Defendants that may deter Relevant Employees from accepting employment with the Prospective Acquirer, including, but not limited to, removal of any non-compete or confidentiality provisions of employment or other contracts with Defendants that may affect the ability or incentive of such individuals to be employed by the Prospective Acquirer, and shall not make any counteroffer to a Relevant Employee who receives a written offer of employment from the Prospective Acquirer; provided, however, that nothing in this Hold Separate Order shall be construed to require Defendants to terminate the employment of any employee or prevent Defendants from continuing the employment of any employee.

E.  Defendants shall provide all Relevant Employees with reasonable financial incentives to continue in their positions until the Closing Date.  Such incentives shall include, but are not limited to, a continuation, until the Closing Date, of all employee benefits, including the funding of regularly scheduled raises and bonuses, and the vesting of pension benefits (as permitted by law and for those Relevant Employees covered by a pension plan) offered by Defendants.

F.  Defendants shall not, for a period of two (2) years following the Closing Date, directly or indirectly, solicit or otherwise attempt to induce any of the Relevant

Employees to terminate his or her employment with the Acquirer; provided however, that Defendants may:

1.  Advertise for employees in newspapers, trade publications, or other media, or engage recruiters to conduct general employee search activities, in either case not targeted specifically at Relevant Employees; or

2.  Hire Relevant Employees who apply for employment with Defendants, as long as such employees were not solicited by Defendants in violation of this Section; provided further however, that this Section shall not prohibit Defendants from making offers of employment to or employing any Relevant Employee if the Acquirer has notified Defendants in writing that the Acquirer does not intend to make an offer of employment to that employee, or where such an offer has been made and the employee has declined the offer, or where the employee's employment has been terminated by the Acquirer.

## VI. COMPLIANCE AND MONITORING

A.  Within thirty (30) days after entry of this Hold Separate Order, and every thirty (30) days thereafter until this Hold Separate Order terminates, Defendants shall submit to Plaintiff a verified written report setting forth in detail the manner and form in which they intend to comply, are complying, and have complied with all provisions of this Hold Separate Order.  Defendants shall include in their reports, among other things that are required from time to time, a full description of the efforts being made to comply with this Hold Separate Order.

B.  All Compliance and Monitoring provisions set forth in Section XI of the Judgment

shall also be available for this Hold Separate Order, as if such Compliance and

Monitoring provisions are fully set forth herein.

## VII. VIOLATIONS AND ENFORCEMENT

A violation of this Hold Separate Order shall also be a violation of the Judgment.  All penalty

provisions and remedies available to Plaintiff set forth in the Judgment shall apply to any

conduct in violation of this Hold Separate Order, as if such penalties and remedies are fully set

forth herein, except that Plaintiff is not bound by Paragraphs XII(F) and (G) of the Judgment if it

seeks equitable and injunctive relief from this Court on an emergency basis in response to

violations of this Hold Separate Order.

## VIII. RELATED ACTION

Consistent with Plaintiff's enforcement policy, Plaintiff will undertake to discuss matters

with the Commission relating to decisions regarding compliance reports, or the selection,

appointment and replacement of trustees, before such decisions are made by Plaintiff.  If there is

a departure between Plaintiff and the Commission regarding such decisions, Plaintiff shall notify

Defendants and meet and confer with Defendants before implementing such decision.

## IX. GENERAL PROVISIONS

A.  This Hold Separate Order shall terminate the day after the divestiture required by the

Judgment is completed; provided, however, that when the Divestiture Assets that are

included within the Hold Separate Business are divested pursuant to the applicable

paragraphs in the Judgment, those Divestiture Assets shall cease to be covered by this

Hold Separate Order.

B.  This Court retains jurisdiction to enable either Party to this Hold Separate Order to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Hold Separate Order, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions. Except as specified in Section VII, the Parties shall meet and confer on the matter(s) that would be presented to the Court for modification, enforcement, or punishment.

C.  If any part of this Hold Separate Order is hereafter adjudged by this Court to be unenforceable, the remaining provisions of this Hold Separate Order shall stay in full force and effect.

BEFORE THIS COURT, the Court finds that entry of this Hold Separate Order is fair, equitable and in the public interest.

IT IS SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE

DATED:  _December 22, 2010_____